UNITED STATES v. GREAT NORTHERN RY. CO.

(Circuit Court of Appeals, Seventh Circuit.  January 5, 1915.)

No. 2060.

1. PLEADING ⊚⇒420—ERRORS—WAIVER—RULING AS TO AMENDMENT.
    Plaintiff waived its exception to the ruling that an amendment of the complaint was necessary by subsequently making the amendment.
    [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1408–1412; Dec. Dig. ⊚⇒420.]

2. MASTER AND SERVANT ⊚⇒17—HOURS OF SERVICE—ACTIONS FOR PENALTIES—PLEADING.
    Under the Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1416 [Comp. St. 1913, § 8678]) § 2, prohibiting carriers from requiring or permitting trainmen to remain on duty for more than 16 consecutive hours, and section 3 (section 8679) providing that the provisions of that act shall not apply in any case of casualty, unavoidable accident, or act of God, nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of the employé at the time he left a terminal, and which could not have been foreseen, in an action for penalties for violations, the government is not bound in its complaint to negative all possible legal excuses within the proviso of section 3, since, where a statute put an exception or limitation into the definition of a duty, a plaintiff counting on a breach of that duty must by his pleadings and proof negative the exception or limitation; but where a statute gives a general definition of a duty, and subsequently provides that a violator shall not be liable under certain circumstances, plaintiff need only plead and prove the violation of the duty as defined, leaving it to defendant to plead and prove the circumstances saving defendant from liability.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. ⊚⇒17.]

3. MASTER AND SERVANT ⊚⇒17—HOURS OF SERVICE—ACTIONS FOR PENALTIES—NATURE OF REMEDY—"CIVIL ACTION."
    Actions for violations of the Hours of Service Act are "civil actions."
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. ⊚⇒17.
    For other definitions, see Words and Phrases, First and Second Series, Civil Action.]

4. MASTER AND SERVANT ⊚⇒13—HOURS OF SERVICE—STATUTORY PROVISIONS.
    The Hours of Service Act should be liberally construed to accomplish the intended cure.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊚⇒13.]

5. MASTER AND SERVANT ⊚⇒17—HOURS OF SERVICE—ACTIONS FOR PENALTIES—SUFFICIENCY OF EVIDENCE.
    In actions for penalties under the Hours of Service Act, if affirmative defenses are pleaded, the proof should bring the case clearly within the letter as well as within the spirit of the proviso of section 3.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. ⊚⇒17.]

6. MASTER AND SERVANT ⊚⇒13—HOURS OF SERVICE—STATUTORY PROVISIONS—"ACT OF GOD"—"UNAVOIDABLE ACCIDENT"—"CASUALTY."
    Within the Hours of Service Act, an "act of God" consists of violence of nature in which no human agency participates by act or omission, an "unavoidable accident" is one occurring while the railroad company and its employés are in the exercise of due care, while a "casualty," differing from the others and not so broad as to deprive them of meaning and

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

use, is an occurrence or happening due entirely to an outside human agency; and if, when a train leaves a terminal. the railroad company, through its inspectors, knows or by the exercise of due care might foresee a cause that would be likely to produce an accident and consequent delay, the delay is not excusable; and hence it was error for the court, in an action for penalties, to charge on the theory that a casualty meant any occurrence or happening, whether unavoidable or avoidable by the exercise of due care, and that all delays, except those knowingly and willfully caused by the railroad, were therefore excusable, and to charge that the question of inspection had no bearing on the case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☜13.

For other definitions, see Words and Phrases, First and Second Series, Act of God; Casualty; Unavoidable Accident.]

7. MASTER AND SERVANT ☜17—HOURS OF SERVICE—ACTIONS FOR PENALTIES—EVIDENCE.

In an action for penalties under the Hours of Service Act, defended on the ground of unavoidable accidents, consisting of the bursting of air hose and the pulling out of drawbars, the government was entitled to prove, as tending to show a negligent habit of the officers and agents of the railroad company, that, during several months preceding the accidents in question, instances of like trouble were of daily occurrence, though the purpose and effect of such evidence should have been limited by an instruction if requested.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. ☜17.

Hours of service of employés, see note to United States v. Houston Belt & Terminal Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the Western District of Wisconsin; A. L. Sanborn, Judge.

Action for statutory penalties by the United States against the Great Northern Railway Company. Judgment for defendant, and the United States brings error. Reversed.

This action was brought to recover penalties for ten alleged violations of the Hours of Service Act. 34 Stat. L. 1415.

So far as trainmen are concerned, Congress enacted in section 2 that no common carrier should require or permit any such employé to be or remain on duty for a longer period than 16 consecutive hours, and declared in section 3 that a violator of section 2 should be liable to a penalty of not more than $500, with a proviso as follows: "That the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal and which could not have been foreseen."

Two train crews of five men each were involved. As the delay in both instances came from substantially identical causes, an outline of the story of one train will suffice.

Defendant is extensively engaged in transporting iron ore from mines near Kelly Lake, Minn., to docks at Allouez, near Superior, Wis., a distance of 100 miles. Rails, cars, and engines are of the heaviest types. From mines to docks the grade is slightly downhill. On the right-hand track of the two mains the loads are brought down, and on the other the empties are returned. So heavy is the traffic that from 100 to 125 loads are taken in one train; and the trains, following each other less than an hour apart day and night, and progressing at an average speed of little over 6 miles an hour, usually consume nearly the whole of the 16 permitted hours in making the run. On June 18, 1912, the crew of train 1981 began service at 7:45 p. m. and remained on duty for more than 20 consecutive hours. When this train

had covered about 70 miles, the seventh train ahead of it pulled out some drawbars and broke into five pieces. The cripple and the six intermediate trains were put in on sidings and the crews were relieved. But no siding ahead was available for train 1981; it could not back up, either on account of its weight or obstructing other down trains; it could not cross over to the other main track without blocking the stream of returning empties; and the men in charge were required or permitted to proceed on the main track to destination.

Delay in the other instance was caused by the bursting of air hose.

Plaintiff's complaint, as originally filed, did not negative the conditions of the proviso. On defendant's motion the court held that such an amendment was necessary. Plaintiff excepted to the ruling, but later made the amendment.

Plaintiff offered, but was not permitted, to prove that between April 1 and June 18, 1912, from 2 to 7, with an average of at least 3, break in twos on defendant's line were caused each day by the pulling out of drawbars or the bursting of hose.

Plaintiff excepted to the following instructions: "Was the breaking of the drawbar in the one case, and the breaking of the hose in the other, a casualty or an accident? Did it happen by chance, unexpectedly? You do not have to find it was unavoidable. Therefore you do not have to find that the company inspected. If the first exception, casualty, were left out, and it said the company shall be excused on account of unavoidable accident, then you might have to find they had done everything they could reasonably to prevent the thing that occurred. * * * The question of inspection is not one bearing on the case. * * * If you find that it was an accident and it caused the delay, even though it was avoidable, the company could not be bound."

Plaintiff tendered, and the court refused to give, the following instruction: "That the burden is upon the defendant to bring itself clearly within the proviso; that is, that the delay was the result of a casualty, unavoidable accident, or act of God, or of a cause which was not known to the carrier at the time the crew left the terminal, and which could not have been foreseen. It cannot be presumed, in the absence of any proof, that the company's equipment was in good condition, and the mere statement that the delay was the result of a pulled out drawbar in one instance and a bursted air hose in another is not, standing alone, sufficient to excuse the defendant."

John A. Aylward, of Madison, Wis., and Roscoe F. Walter, of Washington, D. C., for the United States.

J. A. Murphy, of Superior, Wis., for defendant in error.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). [1] By subsequently amending its complaint plaintiff waived its exception to the ruling that required the amendment; and if the record were otherwise free from error, we should not take up this question of pleading. But since a new trial must be ordered on account of errors duly preserved for review, we deem it proper to put plaintiff in position to move the trial court to strike out the amendment.

[2] The principle (for the rule is not a mere artificiality) is this: If a statute puts an exception or limitation into the definition of duty, then a plaintiff, counting on a breach of the duty, must plead and prove the negative of the exception or limitation. Example: A statute requires a railroad to maintain fences along its right of way except at highway crossings and within the limits of cities and towns. Plaintiff, damaged by reason of a break in the fence, must plead and prove, in

order to establish a failure in duty, that the break in the fence existed outside of highway crossings and the limits of cities and towns. If, however, a statute gives a general definition of duty and then subsequently provides that a violator shall not be liable under such and such circumstances, plaintiff need plead and prove no more than the violation of the duty as defined, and defendant must plead and prove the circumstances that save him from liability. Example: A railroad fencing statute in the same words as above, which then adds that the statute shall not apply in any case of casualty or unavoidable accident or act of God unless the railroad has failed to use diligence in making repairs after actual or constructive notice of the break. Under such a statute, plaintiff must plead and prove, as before, the negative of the limitation in the definition, but not the negative of all possible legal excuses; if any such exists, it must be pleaded and proven as a defense against the consequences of the violation of the defined duty. As the proviso in the hours of service statute is not an exception or limitation in the definition of duty, but only subsequently affords certain exemptions from liability for violations of the defined duty, the court erred in requiring plaintiff to amend its complaint by negativing all possible legal excuses for the violations that were duly set forth. Teel v. Fonda, 4 Johns. (N. Y.) 304; Hart v. Cleis, 8 Johns. (N. Y.) 41; Smith v. U. S., Fed. Cas. No. 13,122; McGear v. Woodruff, 33 N. J. Law, 213, and cases cited; Chicago, B. & Q. Rld. v. Carter, 20 Ill. 391.

[**3-5**] To protect the lives of employés and of the traveling public against accidents due to loss of efficiency from overwork was the purpose of limiting the hours of continuous service. Actions for violations are civil; and the statute, in view of its purpose, should be liberally construed to accomplish the intended cure. If affirmative defenses are pleaded, the proof should bring the case clearly within the letter as well as within the spirit of the proviso. U. S. v. Ill. Centr. Rld. (D. C.) 180 Fed. 630; U. S. v. Kansas City So. Rld. (D. C.) 189 Fed. 471; U. S. v. Denver & R. G. Rld. (D. C.) 197 Fed. 629; U. S. v. Kansas City So. Rld., 202 Fed. 828, 121 C. C. A. 136; U. S. v. Great Northern Rld. (D. C.) 206 Fed. 838; U. S. v. Mo. Pac. Rld. (D. C.) 206 Fed. 847; Great Northern Rld. v. U. S., 211 Fed. 309, 127 C. C. A. 595; U. S. v. Atchison, T. & S. F. Rld. (D. C.) 212 Fed. 1000.

[**6**] A consideration of the proviso will furnish a basis for determining the other assignments of error. If the view that was acted upon by the court throughout the trial is correct, namely, that "casualty" means any occurrence or happening, whether unavoidable or avoidable by the exercise of due care on the part of the railroad, and therefore excuses all delays except those knowingly and willfully caused by the railroad, then it seems clear to us that Congress stands convicted of having followed up "casualty" with a series of meaningless and purposeless expressions. But, if the result can fairly be reached, courts must ascribe a meaning and a purpose to every part of a statute. Looking at the proviso as a whole, and with the intent of leaving, if possible, vitality in all its parts, we conceive that Congress said to the railroads: You need not pay penalties for violations in the following instances: Act of God. You are excusable for delay caused by violence of nature

in which no human agency participates by act or omission. For example, a washout due to an unprecedented flood that was not and could not reasonably have been anticipated. Unavoidable accident. You are excusable if, at the time and place of the accident that caused the delay, you, through your employés, were in the exercise of due care. For example, a switchtender falls dead at an open switch and a collision immediately follows without any one's fault. Last clause of the proviso, explanatory of unavoidable accident. But you are not excusable if, at the time a train leaves a terminal, you, through your inspectors, either knew or by the exercise of due care might have foreseen a cause that would be likely to produce an accident and consequent delay. For example, incompetent trainmen or defective or inefficient drawbars or air hose, particularly if you had notice of a succession of accidents due to those causes. Casualty (which must differ from the other defenses and must not be so broad as to deprive them of meaning and use). You are excusable for delay from an occurrence or happening due entirely to an outside human agency. For example, your train is overturned by a train of another railroad at a crossing by reason of the other road's trainmen's disobedience of the interlock signals. And finally, if you cannot establish one of these defenses by a fair preponderance of the evidence, you must pay the penalty for keeping your employés on duty an excessive time.

Error was therefore committed in giving, and in refusing to give, the instructions quoted in the statement of the case.

[7] Excuse for the delays in this case as shown by the evidence could only come under the head of unavoidable accident. Against defendant's claim of excuse plaintiff was entitled to prove, as it offered, that during several months preceding the accidents in question instances of like trouble were of daily occurrence. A defendant of course is not to be convicted of a particular violation by showing that at other times he committed other violations. And defendant in this case would be entitled to an instruction limiting the purpose and effect of this evidence. But it was clearly admissible "as tending to show a negligent habit of the officers and agents of the railroad company." Grand Trunk Rld. v. Richardson, 91 U. S. 454, 470 (23 L. Ed. 356); District of Columbia v. Armes, 107 U. S. 519, 2 Sup. Ct. 840, 27 L. Ed. 618; Cleveland, etc., Rld. v. Newell, 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; Rockford Gas Co. v. Ernst, 68 Ill. App. 300; 29 Cyc. 611, 612. Phillips v. Town of Willow, 70 Wis. 6, 34 N. W. 731, 5 Am. St. Rep. 114, relied on by defendant as holding to the contrary, is distinguishable because the court notes that the evidence of the prior accident was offered, not to show notice of defect, but to prove that the stone (the claimed defect) was in the traveled part of the highway.

On the evidence in the record the case was one to be submitted to the jury under proper instructions.

The judgment is reversed for further proceedings not inconsistent with this opinion.